## Litchfield v. PennDOT

*Judy Nichols* and *Raymond E. Ginn,* for plaintiffs.
*J.W. Stark,* for defendant.

WILLIAMSON, *J.,* December 8, 1994—Defendant Commonwealth of Pennsylvania, Department of Transportation filed a motion for summary judgment on December 17, 1993 raising the defense of sovereign immunity in general and alleging specifically that the highway in question had been turned back to defendant Woodward Township under the Transfer of State Highways

Act (75 Pa.C.S. §9201), four years prior to the accident which is the subject of plaintiffs' complaint. By order filed January 17, 1994, the motion for summary judgment was denied on the basis that the record was unclear whether the transfer had become valid under the statutory provisions of the Act.

PennDOT has filed a motion for reconsideration and has attached thereto the following documentary material which it believes substantiates its position that the transfer was effective.

(a) An acknowledgment by Woodward Township that it assumed jurisdiction of the road in question effective December 31, 1986.

(b) Woodward Township's response to request for admissions, admitting that all rehabilitative work to the highway agreed upon in the transfer agreement of March 1987, was completed prior to October 2, 1991, the date plaintiff was injured.

(c) An affidavit from PennDOT's maintenance program engineer asserting that the transfer agreement was registered in the Clinton County Court House on February 13, 1987 (an interesting allegation inasmuch as approval of PennDOT's chief counsel as to legality was not executed until March 5, 1987) and that the work was completed by the Department in compliance with the agreement in 1987.

PennDOT urges the court to narrowly construe the section of the Act regarding restoration of highways (75 Pa.C.S. §9207). According to PennDOT, if PennDOT and a municipality jointly determine, for example, that the repair of only 50 percent of the hazardous potholes in a state highway is necessary to put that highway in a satisfactory condition and such agreed upon repairs are completed, the transfer becomes effective. Plaintiffs, not

surprisingly, urge the court to read into the general rule set forth in the Act a requirement that the determination of the required rehabilitative work to be done to a state highway before transfer to a local government be subject to PennDOT's duty to "construct and maintain its highways in such a manner as to protect travelers from dangers which, by the exercise of normal foresight, careful construction and reasonable inspection, can be anticipated and avoided," citing *Drew v. Laber,* 477 Pa. 297, 300, 383 A.2d 941, 943 (1978). Specifically, plaintiffs suggest that the term "satisfactory condition" requires, at a minimum, the elimination of those dangerous conditions which would otherwise constitute exceptions to sovereign immunity under 42 Pa.C.S. §8522(b)(4) and (b)(5). Under plaintiffs' theory, the fact that the rehabilitative work agreed upon between PennDOT and a municipality has been completed does not, in itself, finalize the transfer of a state highway to a municipality under the Act unless the joint determination of necessary rehabilitative work has been made in good faith and eliminates all "dangerous conditions" which a jury may determine to exist under the authority in *Bendas v. Township of White Deer,* 531 Pa. 180, 611 A.2d 1184 (1992) and *McCalla v. Mura,* no. 6 Western District Appeal Docket, 1993, not yet reported.

Examining the present state of the record in the light most favorable to plaintiffs, it would appear that Woodward Township was approached by PennDOT in the summer of 1986 with a proposal that three separate state highways within the township be included in the road turnback program. In order to assist them in evaluating such proposal, the supervisors received a report from an engineering firm dated August 15, 1986, which suggested

that certain rehabilitative work be done to L.R. 18011 (the highway in question), and set forth an estimated cost of such repairs. Subsequently, on February 10, 1987, the supervisors executed agreement no. 020107, subsequently dated as of March 13, 1987, agreeing to the transfer of the highway in question. Attached to said agreement, as page one of exhibit "A," is the list of the work required to place the road in "acceptable condition," [1] which list did not include all of the rehabilitative work suggested by the township engineer. While the court believes that no dispute exists with regard to the existence of the agreement or the fact that the work anticipated by such agreement was completed, the record is substantially unclear as to the reason the township chose not to insist upon the rehabilitative work recommended by their engineer. The differences between the work recommended by the engineer and the work finally agreed upon by the township becomes important when considering the anticipated testimony of plaintiffs' consulting civil engineer who has categorized as "substandard" the condition of the highway with respect to the width of the shoulder, the roadway alignment, the edge-of-road drop-off horizontal height distance, the pavement width, and numerous inadequate clear zones. Arguably, the completion of some of the remedial work proposed by the township engineer in 1986 may

---

1. The court notes the use of the term "acceptable" as opposed to the term "satisfactory" used in the Act. It might be suggested that the term "acceptable" is consistent with PennDOT's legal argument that the transfer depends only upon the terms of the eventual agreement reached between PennDOT and the municipality, whereas the term "satisfactory" is more consistent with plaintiffs' argument that the legislature intended the transfer to take place only after all dangerous conditions had been remedied.

have minimized or reduced plaintiffs' engineer's objections to the condition of the highway.

This court's research discloses no cases which have interpreted the Transfer of State Highways Act. It is difficult for this court to believe, however, that the General Assembly intended to permit PennDOT to rid itself of hazardous state owned highways (whether because of dangerous conditions or defective design) simply by transferring them to local municipalities if the officials of such local municipalities could be convinced to accept them regardless of their condition.[2] The deposition of PennDOT's assistant district engineer allegedly suggests that PennDOT's design manual and the standards promulgated by PennDOT were not utilized in determining the rehabilitative work to be accomplished under the transfer agreement.

Because this court cannot accept PennDOT's proposition that the term "satisfactory condition" means whatever PennDOT and a municipality believe appropriate, the court will again deny the motion for summary judgment. This court believes that the intention of the General Assembly in using the term "satisfactory condition" was to require that a highway be placed in a condition such that the highway be safe for the activities for which it is regularly used, intended to be used, or reasonably foreseen to be used. Should the jury determine that the subject highway was in such a condition at the time of the transfer, PennDOT would be relieved of liability. On the other hand, should the jury determine

---

2. This court has previously acted as solicitor for several boroughs and townships which have been involved in the turnback program. While the record does not disclose if such is the case here, the court understands that cash payments are also frequently part of a turnback agreement.

that a dangerous condition or dangerous design defect existed at the time of the attempted transfer, then Penn-DOT would remain liable to users of the highway even if, as apparently would be the case here, plaintiffs could recover against both PennDOT and the municipality.

Because this a matter of first impression, the court will certify this matter for immediate appeal upon request.

For the reasons set forth herein, it is hereby ordered December 8, 1994 that the motion for summary judgment of the Commonwealth of Pennsylvania, Department of Transportation be denied.

This order involves a controlling question of law as to which there is substantial ground for difference of opinion and, therefore, an immediate appeal from the order may materially advance the ultimate termination of the matter.