870 A.2d 773

Joyce C. MULLIN, Administratrix of the Estate of Crystal G.E. Vattilano and Joyce C. Mullin, Individually, Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, West Grove Fire Company Ambulance Division, Ronald Weir, and New London Township, Appellees.

Joyce C. Mullin, Administratrix of the Estate of Crystal G.E. Vattilano and Joyce C. Mullin, Individually,

v.

Commonwealth of Pennsylvania, Department of Transportation, West Grove Fire Company Ambulance Division, Ronald Weir, and New London Township,

Appeal of New London Township.

Nos. 158 MAP 2002, 159 MAP 2002.

Supreme Court of Pennsylvania.

Argued April 7, 2003.

Decided March 29, 2005.

John J. Breen, Esq., Hudson L. Voltz, Esq., West Chester, for Joyce C. Mullin.

Howard Greeley Hopkirk, Esq., John P. Capuzzi, Norristown, for Department of Transportation.

Thomas X. McAndrew, Esq., Chester Springs, for New London Township.

Daniel Seth Altschuler, Esq., Philadelphia, for West Grove Fire Co. Ambulance Division and Ronald Weir.

Scott B. Cooper, Esq., Todd Dale Getgen, Esq., Harrisburg, for amicus curiae Pennsylvania Trial Lawyers Association.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION*

Justice CASTILLE.

This appeal involves the interplay of the Transfer of State Highways Act ("Transfer Act"), 75 Pa.C.S. §§ 9201–08, and the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521–28. This Court granted review to determine whether, as a matter of law, the Commonwealth of Pennsylvania, Department of Transportation ("PennDOT") could be held liable, under the Commonwealth real estate exception to sovereign immunity, 42 Pa.C.S. § 8522(b)(4), for the alleged improper and danger-ous design of a highway intersection located in New London Township, Chester County, Pennsylvania ("the Township"), which was the location of a fatal motor vehicle accident. PennDOT and the Township were parties to a previous agree-ment transferring jurisdiction of the highways from PennDOT to the Township, pursuant to the Transfer Act. The trial court determined that, notwithstanding the transfer, PennDOT could be found liable and thus denied its motion for summary judgment. The Commonwealth Court reversed and remand-ed, instructing the trial court to enter summary judgment in favor of PennDOT. In this appeal, we hold that PennDOT cannot be held liable because it no longer had jurisdiction over the highways at the time of the accident, and was therefore protected by sovereign immunity. Accordingly, we affirm the order of the Commonwealth Court.

The facts pertinent to this matter are as follows.[1] In 1997, PennDOT and the Township agreed to transfer several state roads, including Routes 3022, known as Kelton–Pennocks Bridge Road, and 3004, known as State Road (collectively, "the highways" or "the intersection"), into the Township's jurisdiction. The parties agreed upon certain repairs to be performed on these roads and the Township consented to being responsible for performing these repairs. On August 1, 1997, PennDOT and the Township executed an agreement ("Transfer Agreement" or "Agreement") pursuant to the Transfer Act, in which they agreed to a transfer of jurisdiction over six state routes, including Kelton–Pennocks Bridge Road and State Road.

The Transfer Agreement noted that PennDOT was to pay the Township for certain road work, which was necessary to bring the roads into a "more acceptable condition." The Agreement provided that the Township was to perform the work on the roads, with completion by December 31, 2001, and that PennDOT would pay the Township $1.1 million to perform that work. The Agreement specified that the payment was for the sole purpose of performing the work on the individual routes which was specified in an attached exhibit. The Agreement specifically noted that the Township undertook its responsibilities "as an independent contractor and is not to be considered an employee of the COMMONWEALTH for purposes of performance of the work described in Exhibit 'A,'" and noted that the Township was "responsible for [the] maintenance and protection of traffic, at all times during the performance of its responsibilities." The Agreement specified that the road transfer was in accordance with 75 P.S. Chapter 92 (the Transfer Act), that "the date of transfer shall be upon execution of [the] agreement and payment," and that, upon transfer, the Township would have jurisdiction of the affected highways in perpetuity. On September 3, 1997, PennDOT

1. Because this matter has reached us in the posture of an appeal from a ruling on summary judgment, the facts on appeal are to be construed in favor of the non-moving party. *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184, 1185 (1992) (citing *Penn Center House, Inc. v. Hoffman*, 520 Pa. 171, 553 A.2d 900 (1989)).

paid the Township $1.1 million for the agreed-upon repairs to the roadways.

Three months later, on December 2, 1997, at approximately 8:36 p.m., Crystal Vattilano ("the decedent") was traveling southbound on Kelton–Pennocks Bridge Road, approaching the intersection at State Road. As she attempted to cross the intersection, her car was broadsided by an ambulance traveling westbound, operated by the West Grove Fire Company. Vattilano suffered multiple injuries resulting in her death. Joyce Mullin, the decedent's mother and the administratrix of her estate, initiated a wrongful death and survival action on November 4, 1999, naming as defendants PennDOT, the Township, the West Grove Fire Company, and the ambulance driver, Ronald Weir. Mullin's complaint alleged, *inter alia,* failure to properly design, construct and maintain the intersection of the roadways.

On December 15, 2000, PennDOT filed a motion for summary judgment, arguing that, as a matter of law, it could not be held liable for the decedent's injuries because it had transferred jurisdiction of the intersecting highways to the Township three months prior to the accident, on September 3, 1997, when it delivered the $1.1 million payment. In response, Mullin and the Township argued that the purported road transfer was not determinative of liability for accidents resulting from dangerous conditions in existence prior to the transfer.

On May 14, 2001, the trial court denied PennDOT's motion. The trial court recognized that PennDOT generally enjoys sovereign immunity under Article 1, Section 11 of the Pennsylvania Constitution, but found that the statutory immunity exception for Commonwealth real estate applied, which includes dangerous conditions on highways under the jurisdiction of a Commonwealth agency. The trial court agreed with the rationale expressed in the case of *Litchfield v. PennDOT,* 22 Pa. D. & C.4th 123 (1994) (Williamson, J.), *aff'd,* 659 A.2d 93 (Pa.Cmwlth.1995) (unpublished opinion), *appeal granted,* 543 Pa. 717, 672 A.2d 310 (1995), *appeal dismissed as improvidently granted,* 544 Pa. 196, 675 A.2d 1210 (1996), which

addressed the Transfer Act. The *Litchfield* trial court found that a highway's condition at the time of transfer determines PennDOT's liability, rejecting the notion that liability rests with the local municipality merely because it accepted the transfer of the road. Applying *Litchfield*, the trial court here found that the issue of whether the highway was in satisfactory condition at the time of transfer was a question for the jury, therefore making it inappropriate to grant PennDOT's motion for summary judgment. The trial court certified the issue for interlocutory appellate review.

On June 28, 2001, the Commonwealth Court granted PennDOT's request for permission to appeal from the trial court's interlocutory order pursuant to Pa. R.A.P. 1311. On appeal, PennDOT argued that the trial court erred in failing to strictly apply the statutory provisions concerning the transfer of highways from PennDOT to local control and thereby improperly denied summary judgment. PennDOT maintained that, contrary to the *Litchfield* decision, jurisdiction of the highways was transferred to the Township three months prior to the date of the accident. Thus, PennDOT argued that it could not be held liable for the decedent's injuries, since it was protected by sovereign immunity.

A panel of the Commonwealth Court reversed in a published opinion authored by Senior Judge Doyle on March 12, 2002. *Mullin v. PennDOT,* 795 A.2d 459 (Pa.Cmwlth.2002). The panel agreed with PennDOT that the trial court erred in relying on *Litchfield* and had incorrectly held that the condition of the roads at the time of the transfer determined liability. The panel noted that, in *Litchfield,* the local municipality and PennDOT had agreed that PennDOT would complete the repairs, whereas here, the Township agreed to make the repairs and assumed responsibility over the highways after signing the agreement and accepting PennDOT's payment on September 3, 1997, before the tragic accident at issue. Because the parties to this transfer stipulated that PennDOT would not be responsible for the repairs to the highways, and PennDOT had fulfilled its part of the agreement by making payment to the Township, the Commonwealth Court conclud-

ed that the condition of the highways was not relevant to the transfer. Instead, it held that liability for the design, construction, and maintenance of a highway rests solely with the governmental unit which had jurisdiction over the highway at the time of the accident. Accordingly, the Commonwealth Court determined that potential governmental liability rested exclusively with the Township, because PennDOT did not have jurisdiction over the pertinent highways and was therefore protected by sovereign immunity. The panel remanded to the trial court with directions to grant PennDOT's motion for summary judgment. Both Mullin and the Township sought further review, which this Court granted.

Appellants Mullin and the Township maintain that PennDOT is subject to liability under the Commonwealth real estate exception to sovereign immunity and can be held liable for the alleged design defects of the highways. PennDOT counters here as it did below that the real estate exception does not apply because it did not have jurisdiction over the intersection at the time of the accident. Analysis of this matter necessarily begins with a general review of the Pennsylvania law on summary judgment and sovereign immunity.

■■■■■ At the heart of appellants' argument is the basic issue of whether the Commonwealth Court erred in reversing and remanding to the trial court with instructions to enter summary judgment in favor of PennDOT. This Court's review of questions of law, such as whether summary judgment was appropriate here, is plenary. *Sphere Drake Ins. Co. v. Philadelphia Gas Works,* 566 Pa. 541, 782 A.2d 510, 512 (2001). Summary judgment may be entered only in those cases where the record clearly demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Id.; see also* Pa. R.Civ.P. 1035.2.[2] The record must be viewed in the light most

---

**2.** Rule 1035.2 provides:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm, Inc.*, 563 Pa. 501, 762 A.2d 339, 340–41 (2000). A trial court's order on summary judgment will be reversed only where the court committed an error of law or clearly abused its discretion. *Basile v. H & R Block, Inc.*, 563 Pa. 359, 761 A.2d 1115, 1118 (2000). Although there are factual disputes underlying this matter, our plenary review involves the purely legal question of whether PennDOT, in this instance, qualifies for Commonwealth agency protection under sovereign immunity. *Sphere Drake*, 782 A.2d at 512.

 It is well-settled that the Commonwealth of Pennsylvania is protected from civil suit under sovereign immunity, except where the General Assembly has specifically provided for a waiver of immunity. 1 Pa.C.S. § 2310.[3] In response to this Court's abrogation of common law sovereign immunity in *Mayle v. Pennsylvania Dept. of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), the General Assembly enacted the Sovereign Immunity Act, 42 Pa.C.S. §§ 8521–28, thereby reviving the doctrine as a legislative matter. *See Dean v. PennDOT*, 561

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

3. Section 2310 provides:

§ 2310. **Sovereign immunity reaffirmed; specific waiver**
Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claim against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.

Pa. 503, 751 A.2d 1130, 1132 (2000); *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307, 310–11 (1989). These immunity provisions were enacted to insulate the Commonwealth and its agencies from liability except in certain specified circumstances, so that state governmental revenues are not subject to unnecessary depletion. *James J. Gory Mech. Contracting, Inc. v. Philadelphia Housing Authority*, 855 A.2d 669, 677 (2004). The Act provides that sovereign immunity is only waived for damages arising out of a negligent act where the common law or a statute would permit recovery if the injury were caused by a person not protected by sovereign immunity. 42 Pa.C.S. § 8522(a). However, in order for the Commonwealth to be found liable, a party must also establish that the cause of action falls under one of nine specifically enumerated exceptions to immunity. 42 Pa.C.S. § 8522(b). Because of the clear intent to insulate the government from liability, the exceptions to sovereign immunity are to be strictly construed. *Dean*, 751 A.2d at 1132.

█ To ascertain whether the Commonwealth, *i.e.*, PennDOT,[4] is subject to liability here based upon a duty to decedent to properly design, construct and maintain the intersection of the highways, we must first identify the exception to sovereign immunity which appellants contend Mullin's claim falls under. *Snyder*, 562 A.2d at 311. Mullin and the Township rely on the Commonwealth real estate exception, which exposes the Commonwealth to liability in the following circumstances:

**Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate

---

4. PennDOT has been recognized as a Commonwealth agency for purposes of the Sovereign Immunity Act. *E.g., Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619, 621 (1995) (PennDOT is Commonwealth agency); *Snyder*, 522 Pa. 424, 562 A.2d 307 (PennDOT protected by sovereign immunity as Commonwealth agency); *Bennett v. Pennsylvania Tpk. Comm'n*, 160 Pa.Cmwlth. 223, 634 A.2d 776, 781 (1993) (when using the phrase "and highways under the jurisdiction of a Commonwealth agency," the General Assembly meant jurisdiction by the Turnpike Commission, PennDOT or another Commonwealth agency).

and sidewalks, including ... highways under the jurisdiction of a Commonwealth agency....

42 Pa.C.S. § 8522(b)(4).

Appellants first claim that PennDOT maintained some authority to oversee the Township's repairs to the highways under the terms of the Transfer Agreement, and therefore maintained residual jurisdiction of the highways, up until the time when the repairs were complete and PennDOT approved of them.[5] Appellants also assert that PennDOT retained jurisdiction of the highways, notwithstanding the transfer, because the General Assembly conferred upon PennDOT the exclusive authority and jurisdiction over state designated highways and the power to enter into contracts for designing, constructing, repairing or maintaining state designated highways and other transportation facilities. Appellants assert that the General Assembly intended to confer an immunity exception for a broad class of highways, not merely state designated highways. Appellants further assert that, accordingly, PennDOT can transfer a road out of the state highway system and still retain some jurisdiction over it, thereby sharing concurrent liability with the local municipality.

Appellants also rely on the Common Pleas Court decision in *Litchfield*, 22 Pa. D. & C.4th 123, for the propositions that PennDOT has the responsibility to make a highway under its jurisdiction safe before it can transfer that jurisdiction, and that whether the highway in fact was safe at the time of transfer is a factual issue for the jury. Appellants note that the alleged design defects in the highways here existed prior to the execution of the Transfer Agreement, and they argue that the General Assembly did not intend to impose liability for such flaws upon local municipalities and that PennDOT should be held responsible for making roads safe prior to transfer. Citing legislative history, appellants also quote the comments of a Senator concerning the Transfer Act, to the

5. Mullin and the Township have filed separate briefs as appellant. Although there is substantial overlap in the arguments, they are not identical. For ease of exposition, we will refer to the arguments collectively, even though as to certain points only one appellant forwards the argument.

effect that "PennDOT will first put these roads in first class condition." Legislative Journal–Senate, July 20, 1983, at 1005 (comments of Sen. Kusse).

Appellants further argue that the Transfer Agreement was based on a mutual mistake and should therefore be deemed a nullity, because the parties believed the highways would be in satisfactory condition prior to the transfer. Appellants also argue that the decision below is contrary to sound public policy, which should mandate that the Transfer Act cannot be interpreted to impose strict liability upon municipalities for unknown design defects. Appellants assert that such an interpretation will force municipalities to undertake extensive engineering studies as a condition precedent to accepting any road from the Commonwealth. Requiring such expensive studies would frustrate the purpose of relieving PennDOT's burden of maintaining roads because fewer municipalities would be willing or able to accept a transfer.[6]

PennDOT responds that any claims against it are properly barred by sovereign immunity because Commonwealth jurisdiction over these highways was transferred to the Township prior to the accident, pursuant to the explicit terms of the Transfer Agreement. PennDOT argues that the plain and unambiguous language of the Sovereign Immunity Act does not suggest that it applies to highways **formerly** under the jurisdiction of a Commonwealth agency. PennDOT further argues that the language of the Transfer Act and the Transfer Agreement establish that jurisdiction over the two highways was transferred to the Township when it accepted PennDOT's payment on September 3, 1997, three months prior to the accident. In PennDOT's view, it is only when PennDOT or its contractors agree to perform the rehabilitative work on the

6. The Township also urges this Court to apply products liability law, to the extent that it suggests that the manufacturer of defective products is in a superior risk-bearing position, to find PennDOT liable. The Township asserts that such an approach would encourage PennDOT to safely design roads to minimize harm. The Township posits that, because PennDOT did not disclose the alleged design defects to the Township, it breached its implied warranty of safe design. This issue was not addressed by the courts below and appears to have been raised here for the first time. Accordingly, we will not address the claim.

road that the effectiveness of the jurisdictional transfer is delayed until the work is completed. PennDOT notes that, in the case *sub judice,* the Township agreed to perform the rehabilitative work, thereby making the transfer effective upon payment by PennDOT of the funds designated for rehabilitation work.

PennDOT further argues that the transfer acted to place liability on the party with the responsibility and authority to correct any potential problems, *i.e.,* the Township, which specifically accepted responsibility for the highways. PennDOT submits that it cannot be held responsible for roadway defects in perpetuity, especially because the Transfer Act contemplates that the parties will agree as to what work should be performed and that the local municipality will, at some designated point, assume jurisdiction and liability. PennDOT also responds to appellants' legislative history argument by noting that, regardless of the comments made by a select legislator, it is the plain language of the statute adopted by the entire Assembly which governs.

The sovereign immunity question at this juncture depends upon whether, as of the date of the accident, "jurisdiction" over the intersection had been effectively transferred from PennDOT to the Township. This issue, in turn, requires consideration of the Transfer Agreement and the provisions of the Transfer Act. As in all statutory interpretation matters, this Court's review of the proper understanding and applicability of the Sovereign Immunity Act and the Transfer Act is plenary. *Hannaberry HVAC v. Workers' Compensation Appeal Bd. (Snyder, Jr.),* 575 Pa. 66, 834 A.2d 524, 527 (2003). If jurisdiction was effectively transferred by PennDOT to the Township before the accident, then the highways were not "highways under the jurisdiction of a Commonwealth agency," within the meaning of the real estate exception of the Sovereign Immunity Act, 42 Pa.C.S. § 8522(b)(4), and liability cannot be imposed on PennDOT.

The Transfer Act was enacted and became effective in July 1983, as part of an overall effort to help the Commonwealth

conserve resources. Its purpose was to relieve the Commonwealth from the burden of maintaining little used, or functionally local, state roads by turning them over to local governments, provided that those local governments were willing to undertake their maintenance. 75 Pa.C.S. § 9205 ("No highway transfer shall occur between [PennDOT] and an affected municipality unless the municipality agrees to the transfer of the described highway."). PennDOT is responsible for identifying functionally local highways and then notifying local municipalities of PennDOT's willingness to transfer the identified highways. 75 Pa.C.S. §§ 9203, 9204. The turnovers are not coercive exercises: local municipalities benefit from the transfers by gaining the authority to maintain and repair the roads on their own, at the time and in the manner they wish, and, as noted, the municipality's agreement is required before a transfer may occur. In addition, a section of the Motor Vehicle Code dedicates annual maintenance payments of $2,500 per mile for highways which are subject to transfers. *See* 75 Pa.C.S. § 9511(b), (g). The Act also provides for PennDOT and the affected municipality to address restoration of a subject highway in anticipation of transfer. Thus, Section 9207(a) provides:

### § 9207. Restoration of highways

**(a) General rule.**—The department and the affected municipality shall jointly determine whether any rehabilitative work is required to put the highway or road in a satisfactory condition. The rehabilitative work may be done by department or municipal forces, or by contract, as the parties shall agree. If the work is to be performed by the department or its contractors, the highway or road transfer shall not be effective until all agreed upon rehabilitative work has been completed.

75 Pa.C.S. § 9207(a).

Section 9207(b) addresses funding for such restoration work, and directs that Commonwealth funds will be used. Section 9207(c) addresses the question of liability after a transfer:

**(c) Public liability.**—Upon transfer of any highway, the municipality shall assume the same public liability for the

transferred highway as it assumes for other highways under municipal jurisdiction.

75 Pa.C.S. § 9207(c).

The language of Section 9207 is plain and unambiguous. It contemplates that the two parties to a highway turnover—PennDOT and the affected municipality—are authorized to jointly determine whether any rehabilitative work is required to place the highway in a satisfactory condition. In this regard, the municipality stands at arms' length since a transfer cannot occur without the municipality's agreement. If the parties determine that repairs are required, the statute contemplates that it is the responsibility of the parties to agree as to which party shall make repairs. It is only where PennDOT or its contractors are required to do the restoration work that a delay in the transfer of the highways occurs, the transfer to take effect when the rehabilitative work the parties agree upon is completed. Finally, in no less plain terms, the statute makes clear that "public liability" for a highway is a function of when the transfer actually occurs, and the "public liability" is the same as for other highways under the local municipality's jurisdiction.

Although the Transfer Act was enacted over two decades ago, it has attracted little attention in the case law prior to this matter. Apparently, only one reported trial court case, *Litchfield, supra,* 22 Pa. D. & C.4th 123, has ever addressed the Transfer Act. Since *Litchfield* was crucial to the trial court's decision here, and since it is the only existing published authority, some discussion of that case is warranted. In *Litchfield,* a lawsuit similar to the one *sub judice* was initiated following a car accident on a road that was the subject of a transfer agreement four years earlier, in which PennDOT had agreed to make certain repairs, and indeed made those repairs, and the local municipality agreed to accept the road transfer. PennDOT filed a motion for summary judgment, which the trial court denied. The trial court expressed concern with the local municipality's judgment in explicitly agreeing to accept the road, without requiring PennDOT to first perform all of the rehabilitative work suggested by the munici-

pality's engineer. In the court's view, it was "difficult ... to believe ... that the General Assembly intended to permit PennDOT to rid itself of hazardous state owned highways ... simply by transferring them to local municipalities." The court instead found that, by using the words "satisfactory condition" in Section 9207(a), the General Assembly intended to require that a highway be placed in a "condition such that the highway be safe for the activities for which it is regularly used, intended to be used, or reasonably foreseen to be used." 22 Pa. D. & C.4th at 127. The *Litchfield* court held that, if a jury were to find that a dangerous condition existed at the time of the transfer, then PennDOT would remain liable to users of the highway, even if those users could recover against both PennDOT and the local municipality and irrespective of any transfer of jurisdiction from PennDOT to the municipality. Accordingly, in that court's view, summary judgment was improper.[7] *Id.* at 128.

*Litchfield* was a single-judge decision, rendered by the Court of Common Pleas of Clinton County, and it is not controlling law before this Court. It is also not particularly persuasive. First, it is factually distinguishable because under the transfer agreement there, PennDOT had accepted responsibility to perform a list of agreed-upon repairs and had completed them prior to the accident. Here, it was the Township which agreed to make all repairs, with PennDOT reimbursing the Township.

Furthermore, the *Litchfield* trial court construed the Transfer Act as making state highway transfers ineffective until the roads are put in a satisfactory condition and made safe, irrespective of the parties' agreement, a transfer of jurisdiction, or the identity of the party which agreed to make necessary repairs. However, the plain language of the statute makes clear that it is PennDOT and the affected municipality who are to "jointly determine" what is required to put the

---

7. The Commonwealth Court affirmed the trial court's decision in an unpublished memorandum. *Litchfield*, 659 A.2d 93 (1995). This Court granted allocatur, but the case was later dismissed as improvidently granted, with then-Justice Zappala and this author noting our dissents to the dismissal. 544 Pa. 196, 675 A.2d 1210 (1996).

highway into a satisfactory condition. It is not a question to be determined in hindsight, case by case, by a jury. Nor are municipalities to be rendered immune from the consequences of their contractual agreements merely because, in hindsight, an agreement appears to have been unwise. Although the *Litchfield* court's rather absolutist position may be consonant with the view of the legislation expressed by Senator Kusse, that view was not adopted into the language of the statute, and it is the plain language of the statute to which we must give deference. 1 Pa.C.S. § 1921(b) ("[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). To the extent that *Litchfield* suggests otherwise, it is erroneous, and correspondingly, the trial court erred in following the *Litchfield* court's construction of the Transfer Act.

In any event, as noted, *Litchfield* is factually inapposite because, in the case *sub judice,* it was the Township that agreed to make the restorative repairs. The plain language of the statute states that transfers are delayed until restorative work is completed only in cases where "the work is to be performed by [PennDOT] or its contractors." 75 Pa.C.S. § 9207(a). The statute does not contemplate delaying a transfer where, as here, the local municipality agreed to make the repairs. Accordingly, the transfer was complete upon the parties' agreement and payment, which occurred before the accident at issue.

■ Appellants next argue that the Township merely agreed to serve as PennDOT's contractor in performing the agreed upon road work, and thus, the Agreement delayed the transfer of the highways until after all agreed-upon repairs were completed. PennDOT responds that the language in the Transfer Agreement naming the Township as an "independent contractor" does not mean that the Township thereby became deputized as a **contractor of PennDOT,** but to the contrary, that the Township would do the work independently and not as an employee under the control of PennDOT.

The Transfer Agreement provides:

3. It is understood that the [Township] undertakes the responsibilities as an independent contractor and is not to be considered the employee of [PennDOT] for purposes of performance of the work described in Exhibit "A".

Transfer Agreement, para. 3. An independent contractor is not the same as a party's own "contractor." The clear language of the transfer Agreement, that the Township was not to be considered PennDOT's employee, requires rejection of appellants' argument that the Township was a mere PennDOT "contractor."

Furthermore, if we were to adopt appellants' interpretation of the Transfer Agreement, PennDOT would always retain jurisdiction and responsibility over highways under appellants' theory, regardless of which party agrees to perform the rehabilitative work, because that work is always performed pursuant to a contract between PennDOT and the local municipality, and PennDOT finances the rehabilitative work. Employing such a construction would reduce the limiting language of Section 9207(a) ("[i]f the work is to be performed by [PennDOT] or its contractors") to mere surplusage. *See* 1 Pa.C.S. § 1922(2) (General Assembly intends entire statute to be effective). Accordingly, there was no delay in the transfer of the highways from PennDOT to the Township in this case.

We also reject appellants' arguments that the Transfer Agreement is a nullity by reason of mutual mistake and that the Transfer Act should be construed in such a way as to prevent PennDOT from relieving itself of liability by transferring dangerous roads to local municipalities. Nothing in the Transfer Agreement indicates that the parties mistakenly believed that they were dealing with a perfectly designed highway. Indeed, if that were the case, PennDOT would not have paid the Township such a significant sum for repair work. It is clear under the Transfer Act that transfers occur only when local municipalities give their consent and that municipalities are free to bargain over the extent of repairs and the responsibility as to which party makes those repairs. 75 Pa.C.S. § 9205. Municipalities are free to investigate the condition of the highways and assess the need for repair and

restoration before agreeing to a transfer. Accordingly, a local municipality cannot be said to have unknowingly accepted a road that was in such poor condition as to warrant negation of a lawful transfer agreement on a mutual mistake theory, or a theory that PennDOT cannot transfer "dangerous roads" as a matter of law. It is also worth noting that there is nothing in this record to suggest that the Township's bargaining abilities were unfairly restricted during its negotiations with Penn-DOT. If the Township wished to protect itself from exposure to liability, it could have thoroughly investigated the condition of the highways. But the municipality cannot be permitted to have both benefits of the arm's length bargain: *i.e.,* the repair and maintenance funds that accompany the transfer, as well as the immunity that existed before that transfer.

The terms of the Transfer Agreement determine precisely when the transfer of jurisdiction took place in this case. Paragraph 7 states in pertinent part:

> Transfer of jurisdiction of the herein named state highways shall be in accordance with ... 75 Pa.C.S. Chapter 92. Full execution and approval of the Agreement by both parties shall be deemed to satisfy the requirements of Act 1983–32 and the date of transfer of jurisdiction shall be upon execution of agreement and payment.

Transfer Agreement, para. 7. In light of the plain language of this provision, the Commonwealth Court properly determined that the transfer of jurisdiction took place on September 3, 1997, after the agreement had been signed by all parties and PennDOT had delivered the $1.1 million payment to the Township. On that date, upon acceptance of payment, the Township assumed "the same public liability for the transferred highway as it assumes for other highways under [its] jurisdiction." 75 Pa.C.S. § 9207(c). It also obtained ownership of the highways. *See* 75 Pa.C.S. § 9206 (list of transferred highways shall be certified to office of recorder of deeds of county in which participating municipalities are located).

Finally, we must determine whether PennDOT is protected from this suit by sovereign immunity. Under the

Commonwealth real estate exception to sovereign immunity, PennDOT owes a duty to those using its real estate, to maintain the condition of the property under its jurisdiction so that it is "safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used." *Bendas,* 611 A.2d at 1186 (quoting *Snyder,* 562 A.2d at 312); *see also Drew v. Laber,* 477 Pa. 297, 383 A.2d 941 (1978) (municipality has duty to construct and maintain highways in manner to protect travelers from dangers which, by exercise of normal foresight, careful construction and reasonable inspection can be anticipated and avoided). PennDOT has no corresponding statutory duty with regard to locally-owned property or highways *previously* under its jurisdiction. 42 Pa.C.S. § 8522(b)(4). Appellants ignore the fact that the Sovereign Immunity Act waives Commonwealth immunity only where PennDOT has jurisdiction, which requires that "a dangerous condition must derive, originate from or have as its source the Commonwealth realty." *Snyder,* 562 A.2d at 311 (PennDOT has no duty to make safe property which is adjacent to highway, owned by third party).

We therefore reject appellants' argument that, for purposes of sovereign immunity, PennDOT should be deemed to retain some form of residual jurisdiction over the highways despite their transfer to the Township. Although the Transfer Agreement provides PennDOT with some supervisory authority over the rehabilitative work to be performed by the Township, such authority is seemingly meant to ensure that the funds provided to the Township are properly utilized and is not synonymous with ownership, jurisdiction, or liability. *See Bennett,* 634 A.2d at 781 (authority of state police over abandoned vehicles on turnpike not tantamount to giving state police "jurisdiction"). There would be no rational reason for PennDOT to transfer any state road to local control if residual jurisdiction, in the form of continuing liability, were retained. We also reject appellants' related argument that PennDOT shares joint liability with the Township pursuant to Section 9207(c) of the Transfer Act, which gives the Township the same public liability for transferred highways as for other highways under its jurisdiction. Appellants cite no authority

in support of the proposition that PennDOT is subject to joint liability for conditions on locally-owned roadways. Rather, the plain and unambiguous language of subsection 9207(c) provides that jurisdiction, and therefore liability, lie with the Township upon transfer. Furthermore, the plain language of the Commonwealth real estate exception to sovereign immunity waives sovereign immunity **only** when a highway is under the actual **jurisdiction** of a Commonwealth agency, which is not the case here.

Since the purpose of the Transfer Agreement was to transfer ownership and jurisdiction of the highways from PennDOT to the Township and because that was accomplished on September 3, 1997, with the acceptance of payment that followed upon the signing of the agreement, we hold as a matter of law that, at the time of the accident, PennDOT did not have jurisdiction of these highways. Accordingly, the real estate exception does not apply here and PennDOT is entitled to sovereign immunity. Because, as a matter of law, PennDOT cannot be exposed to liability, summary judgment in PennDOT's favor is proper.[8]

For the foregoing reasons, we hold that the Commonwealth Court correctly reversed and remanded to the trial court with instructions to enter summary judgment in favor of PennDOT. Accordingly, the order of the Commonwealth Court is affirmed.

Former Justice LAMB did not participate in the decision of this case.

8. Although appellants do not expressly claim that a new exception to sovereign immunity should be recognized, that argument underlies their positions. We reach our determination today keeping in mind that the exceptions to sovereign immunity are to be narrowly construed and that the General Assembly can correct any misinterpretation of the immunity provisions by amending the statute so as to explicitly waive immunity for design defects in roadways transferred to local municipalities under the Transfer Act. *Dean*, 751 A.2d at 1132–34; *cf.* 42 Pa.C.S. § 8522(b)(5) (setting forth conditions of explicit waiver of sovereign immunity regarding potholes as a dangerous condition of the highways). Absent such legislative directive, however, we conclude that the Commonwealth real estate exception does not apply to the defective design of roadways transferred under the Transfer Act.