# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Courtney Trent Richardson,     :
               Appellant    :
                                 :
           v.           :
                                 :

Jerome Walsh, Supt. (Retired),   :
Chris Putnam (Unit Manager J-Blk), :
Michael Thruchon (Facility       :
Maintenance Manager 3), Paul    :
Mooney (Facility Maintenance    :
Manager 1), Greg Gordner (Facility :
Maintenance Manager 1), Mr. Taylor :  No. 1045 C.D. 2016
(Maintenance Worker), et al.     :  Submitted: September 2, 2016


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                        FILED: December 19, 2016

          Courtney Trent Richardson (Richardson) appeals pro se from the Luzerne County Common Pleas Court's (trial court) January 5, 2016 order sustaining the preliminary objections filed by Pennsylvania Department of Corrections' (Department) Retired State Correctional Institution – Dallas (SCI-Dallas) Superintendent Jerome Walsh (Walsh), J-Block Unit Manager Chris Putnam (Putnam), Facility Maintenance Manager 3 Michael Truchon (Truchon),[1] Facility Maintenance Manager 1 Paul Mooney (Mooney), Facility Maintenance Manager 1 Greg Gordner (Gordner), and Maintenance Worker Mr. Taylor (Taylor)[2]

---

[1] According to the grievance documents Truchon's name is spelled without an "h." *See* Complaint Ex. 2.

[2] Taylor's first name does not appear in the record.

(collectively, Defendants).  The issue before this Court is whether the trial court erred by concluding that Richardson failed to state a claim for which relief may be granted.[3]  After review, we affirm.

Richardson is an inmate at SCI-Dallas.  On August 25, 2015, Richardson filed a Complaint in the trial court for money damages (Complaint), wherein he alleged that Taylor removed his cell window on August 22, 2013, and the window could not be properly repaired.  He further averred that the window was never replaced.  Certified Record (C.R.), Complaint ¶ 12.

According to the Complaint and the documents attached thereto, on January 20, 2014, Richardson filed Grievance No. 494469 (Grievance) with Truchon, claiming:

> Since [August 22, 2013,[4]] I have not had a window in the cell that I am in.  I had to rely on taping empty coffee plastic bags along with empty tobacco bags and any other kind of insulations.
>
> We have experience[d] extreme cold weather during this period, and I have gotten ill several times.  Being exposed to these kinds of living conditions . . . [is] a direct violation of my civil and constitutional rights.  I wish to be

---

[3] Richardson listed in his Statement of Questions Involved, the following questions:

1.  Do all of the [Defendants] have immunities in their professional and private capacities?

2.  Are the [Defendants] guilty as challenged by [Richardson]?

3.  Did [Richardson] exhaust all of his remedies on the state level?

4.  Did [Richardson] file his [C]omplaint in [f]ederal [c]ourt?

Richardson Br. at 4.  These Statements of Questions are subsumed in the issue of whether the trial court erred by concluding that the Complaint failed to state a claim for which relief may be granted.

[4] Although Richardson initially stated that the window was removed in "September 2013," Complaint Ex. 1, based upon his subsequent determination that it was removed on August 22, 2013, he amended the date.  *See* Complaint ¶ 13.

2

> compensated fully by those deemed responsible. $85,000.00 each. Also for materails (sic) and work missed.
>
> . . . .
>
> I also wish to have the window replaced without my personal property being used as a ladder/vandalized!

Complaint Ex. 1; *see also* Complaint ¶ 13. The Grievance further reflects that, before initiating the Grievance, Richardson: "Spoke to both shifts of block officers who did their duty by placing work orders in. [sic] Brought this to the attention of Cert team[5] members who notified the Unit Manager." Complaint Ex. 1.

On February 6, 2014, Truchon issued an Initial Review Response, wherein he upheld the Grievance, but stated: "Your window was replaced 1-31-14." Complaint Ex. 2; *see also* Complaint ¶ 14. Richardson appealed from Truchon's decision to Walsh. Complaint Ex. 3; *see also* Complaint ¶ 15.

> On February 10, 2014, Walsh upheld Truchon's decision, stating:
>
> I have reviewed the above-noted [G]rievance, the Grievance Officer's response and your subsequent appeal of said [G]rievance. My decision is as follows:
>
> I would first like to note for your information, this [G]rievance should have been rejected due to the untimeliness of your filing. You . . . failed to file the [G]rievance until January 20, 2014.
>
> Since Ms. Lucas[6] processed it, I will address it. Be advised, **I contacted [Putnam] regarding this matter along with pulling work orders that were submitted to have this matter fixed.** It is apparent for some reason that this window has been an issue for quite some time. I retrieved two work orders that were submitted in 2013 to have the window taken out and repaired. On August 22, 2013, the window was taken out for repair. On December 16, 2013, the window was taken out again for repair[] and put back in. It is uncertain as to why there appears to be

---

[5] The term "Cert team" is not defined in this record.

[6] The record does not identify Ms. Lucas' title or duties.

such an issue with this window. As I noted previously, **I contacted [Putnam] and was informed [that], at no time did you ask to be moved or complain about your cell being cold and/or the window. I was informed that you also did not discuss or complain to the officers on J block that your cell was cold or that you wanted to be moved.** For the record, you have been housed in this cell since October of 2011. In my investigation, I also contacted the medical department and was informed you signed up for sick call on January 16, 2014, and noted 'I have a bad cold.' You did not seek follow[-]up care after January 16, 2014 for cold symptoms; therefore, this matter was considered resolved. I would encourage you to speak to the appropriate individuals if you are having housing unit issues/concerns. I would also encourage you not to wait so long to file a complaint/grievance like this. If you would have made appropriate staff aware of the matter, you would have been moved to another cell until the repair was totally completed. **It is apparent from work orders that staff acted in good faith and attempted to get this matter rectified.**

Complaint Ex. 4; *see also* Complaint ¶ 16 (emphasis added). Richardson appealed from Walsh's decision to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). Complaint Ex. 5a; *see also* Complaint ¶ 17.

On March 20, 2014, SOIGA Chief Grievance Officer Dorina Varner (Varner) upheld Walsh's decision ruling, in pertinent part:

A review of the record found that you were moved to another cell on January 23, 2014. The window in your previous cell, which had been repaired on August 22, 2013 and December 16, 2013, was replaced on January 31, 2014. **The record also shows that you failed to inform staff that you wanted to be moved to another cell, that your cell was cold, or that the window needed [to be] repaired again. You were moved to another cell on January 23, 2014; therefore, your issue has been resolved.** You provide no evidence to substantiate your claims that your civil rights or constitutional amendment rights have been violated. This office upholds the decisions of the Grievance Officer and the Facility Man[a]ger in denying your grievance and all requested relief. It is noted that your

4

grievance was submitted untimely and should have been rejected by the Grievance Officer.

Complaint Ex. 5b (emphasis added); *see also* Complaint ¶ 17.

In his Complaint, Richardson claims that Defendants deprived him of his constitutional rights by "committing violations of the following statutory provisions: a.) Freedom from cruel and unusual punishment; b.) Article 1 §§[] 1, 9 and 13 of the Pennsylvania Constitution; c.) Eighth Amendment of the United States (U.S.) Constitution; [and] d.) [Section 8550 of the Judicial Code,] 42 Pa.C.S. § 8550 Willful Misconduct." Complaint ¶ 36; *see also* Complaint ¶¶ 11, 18-35. Richardson sought a declaratory judgment and demanded $25,000.00 in compensatory damages, $85,000.00 from each Defendant in punitive damages, plus costs and fees. *See* Complaint ¶¶ 38-39.

On November 17, 2015, Defendants filed preliminary objections to the Complaint in the nature of a demurrer, contending that: (1) Richardson failed to plead facts under which Defendants' sovereign immunity is waived;[7] (2) Richardson failed to state facts sufficient to state a claim against Defendants under federal or state law; (3) Richardson failed to state a claim for violation of the Pennsylvania Constitution; and, (4) Richardson failed to properly exhaust his administrative remedies. Richardson filed a response to Defendants' preliminary objections. On January 5, 2016, the trial court sustained Defendants' preliminary objections and dismissed Richardson's Complaint with prejudice. Richardson appealed to the Superior Court,

---

[7] "Immunity from suit is an affirmative defense that must be raised as a new matter in a responsive pleading. [However, c]ourts allow defendants to raise immunity by preliminary objection where the defense is clearly applicable and where the plaintiff does not object. Both conditions exist here." *Balletta v. Spadoni*, 47 A.3d 183, 195 (Pa. Cmwlth. 2012) (citations omitted).

5

which transferred the matter to this Court.[8] The trial court issued its opinion on April 18, 2016.

Initially, Section 6602(e) of what is commonly referred to as Pennsylvania's Prison Litigation Reform Act (PLRA) provides, in relevant part:

> [T]he court shall dismiss prison conditions litigation[9] at any time, . . . if the court determines . . . :
>
> . . . .
>
> The prison conditions litigation . . . fails to state a claim upon which relief may be granted or the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief.

42 Pa.C.S. § 6602(e). Moreover,

> [i]n ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.
>
> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the complaint and all inferences

---

[8] "Where a trial court dismisses a complaint based on preliminary objections, this Court's review is limited to determining whether the trial court committed an error of law or an abuse of discretion." *Kittrell v. Watson*, 88 A.3d 1091, 1095 (Pa. Cmwlth. 2014).

[9] Section 6601 of the PLRA defines "prison conditions litigation" as

> [a] civil proceeding arising in whole or in part under [f]ederal or [s]tate law with respect to the conditions of confinement or the effects of actions by a government party on the life of an individual confined in prison. The term includes an appeal. The term does not include criminal proceedings or habeas corpus proceedings challenging the fact or duration of confinement in prison.

42 Pa.C.S. § 6601.

6

reasonably deducible therefrom.[10]   It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the complaint.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted).

Here, the trial court dismissed the Complaint, holding:

The instant matter alleges a cell window was never repaired or replaced.  Defendants can <u>only</u> be held liable for negligence, and only if the negligence falls within one of the nine exceptions to sovereign immunity.  Moreover, there is a requirement that the defect of the real property caused the injury to occur.  *Battle v. Phila*[.] *Hous*[.] *Auth*[.], 594 A.[]2d 769 (Pa Super. 1991).  Where [Richardson's] claim specifically alleges negligence[,] the limited waivers of sovereign immunity apply.  Additionally, the allegations of intentional misconduct within the scope of employment are also barred by sovereign immunity.  [*See* La[]*Frankie v. Miklich*, 618 A.2d 1145 (Pa. Cmwlth. 1992)][.]

This [trial c]ourt also found that [Richardson] failed to state a federal claim with the required specificity, sought a non-existent private cause of action for damages premised on violation of the Pennsylvania Constitution, and failed to plea[d] requisite facts to demonstrate exhaustion of administrative remedies to trigger a [f]ederal [c]laim.

Trial Ct. Op. at 1.

The trial court sustained Defendants' objection that Richardson failed to plead facts in the Complaint under which Defendants' sovereign immunity is waived. We agree.  "It is well-settled that the Commonwealth of Pennsylvania is protected from civil suit under sovereign immunity, except where the General Assembly has

---

[10] "[C]ourts reviewing preliminary objections may not only consider the facts pled in the complaint, but also any documents or exhibits attached to it." *Allen v. Dep't of Corr.,* 103 A.3d 365, 369 (Pa. Cmwlth. 2014).

specifically provided for a waiver of immunity." *Mullin v. Dep't of Transp.*, 870 A.2d 773, 779 (Pa. 2005).

> The [act commonly referred to as the Sovereign Immunity Act[11] (Act)] provides that sovereign immunity is only waived for damages arising out of a negligent act where the common law or a statute would permit recovery if the injury were caused by a person not protected by sovereign immunity. However, in order for the Commonwealth to be found liable, a party must also establish that the cause of action falls under one of nine specifically enumerated exceptions to immunity.[12] Because of the clear intent to insulate the government from liability, the exceptions to sovereign immunity are to be strictly construed.

*Mullin*, 870 A.2d at 779 (citations omitted).

Richardson does not aver in his Complaint that Walsh, Putnam, Truchon, Mooney, Gordner and Taylor acted negligently. Rather, Richardson's Complaint alleges that he filed a Grievance and subsequent appeals relating to his Grievance, and made legal conclusions.

Specifically, Richardson avers that Defendants "committed [i]ntentional [t]ort[s] against [Richardson] and [are] not immune from liability pursuant to [Section

---

[11] 42 Pa.C.S. §§ 8521-8528.

In the Complaint, Richardson avers that "[t]his action is brought pursuant to . . . [the act commonly referred to as] the Political Subdivision Tort Claims Act [(Tort Claims Act)] . . . ." Complaint ¶ 1. However, the Tort Claims Act only applies to *local agencies and their employees*. *See* 42 Pa.C.S. § 8541 ("no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person"). Because Richardson's Complaint makes claims against individuals acting in the scope and course of their *Commonwealth* employment, the Act, rather than the Tort Claims Act, is controlling in this case.

[12] A Commonwealth party may be liable under Section 8522(b) of the Act for damages due to: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. *See* 42 Pa.C.S. § 8522(b).

8550 of the Judicial Code,] Willful Misconduct." Complaint ¶¶ 20, 23, 26, 29, 32, 35. We acknowledge that Section 8550 of the Judicial Code provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of [S]ections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) [of the Judicial Code, 42 Pa.C.S. §§ 8545, 8546, 8549] shall not apply.

However, **Section 8550 of the Judicial Code is applicable only to** "**action**[s] **against a local agency or employee thereof**." 42 Pa.C.S. § 8550 (emphasis added). Section 8501 of the Judicial Code defines "local agency" as "[a] government unit other than the Commonwealth government." 42 Pa.C.S. § 8501. Here, **since the Department is a *Commonwealth* agency,**[13] and Defendants are *Commonwealth agency employees*, **Section 8550 of the Judicial Code does not expressly waive** their official **immunity**. *See Williams v. Stickman*, 917 A.2d 915, 917 (Pa. Cmwlth. 2007) (SCI employees "are **not** employees of a local agency").

In addition, this Court has held that "**state employees do not lose their sovereign immunity protection for intentional torts committed within the scope of their employment**." *Kull v. Guisse*, 81 A.3d 148, 154 n.5 (Pa. Cmwlth. 2013) (emphasis added). Thus, "when an employee of a Commonwealth agency was acting within the scope of his or her duties, [he/she] is protected by sovereign immunity

---

[13] Section 102 of the Judicial Code defines "Commonwealth government" as including "agencies of the Commonwealth." 42 Pa.C.S. § 102. "Commonwealth agency" is defined as "[a]ny executive agency or independent agency." *Id.* Under Section 203 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 61, the Department is an executive agency. Accordingly, the Department is a Commonwealth agency.

9

from the imposition of liability for intentional tort claims." *Williams*, 917 A.2d at 917 (quoting *La Frankie*, 618 A.2d at 1149).

> [Richardson] averred [in the Complaint] that the [Defendants] violated his constitutional rights and committed numerous intentional torts against him. He did not, however, allege that the [Defendants] acted outside the scope of their employment;[14] nor did he assert that the actions of the [Defendants] fit into any of the exceptions to sovereign immunity listed in Section 8522(b) of the [Judicial] Code, 42 Pa.C.S. § 8522(b). Therefore, since [Richardson] did not aver that the [Defendants] were acting outside the scope of their duties when he was allegedly harmed, and since [Richardson] did not aver that the [Defendants'] actions were within any exception to sovereign immunity, we conclude that the trial court correctly determined that the [Defendants] were immune from suit.

*Bronson v. Lechward*, 624 A.2d 799, 801-02 (Pa. Cmwlth. 1993) (citation omitted). Accordingly, because it "appear[s] with certainty that the law will not permit [Richardson's] recovery[]" for intentional torts, the trial court did not err by sustaining Defendants' preliminary objections on that basis. *Torres*, 997 A.2d at 1245.

Richardson's remaining claims in his Complaint against Walsh, Putnam, Truchon, Mooney, Gordner and Taylor are for allegedly violating his rights under Article I, Sections 1, 9 and 13 of the Pennsylvania Constitution and the Eighth Amendment to the U.S. Constitution. The trial court sustained Defendants' objection that Richardson failed to state valid claims for constitutional violations. We agree.

Pennsylvania Rule of Civil Procedure 1019(a) states: "The material facts on which a cause of action or defense is based shall be stated in a concise and

---

[14] Despite Richardson's declaration in the Complaint that "[e]ach [Defendant] is being sued in their [sic] [p]ersonal and [o]fficial [c]apacities," Complaint ¶ 39, he does not aver that any of Defendants' alleged action or inaction occurred outside the scope of their official responsibilities.

summary form." Pa.R.C.P. No. 1019(a). This Court has declared that "[t]he purpose of this rule is to require the plaintiff to disclose the material facts sufficient to enable the adverse party to prepare the case." *Bennett v. Beard*, 919 A.2d 365, 367 (Pa. Cmwlth. 2007). Moreover, because "Pennsylvania is a fact-pleading jurisdiction[,] . . . a pleading must not only apprise the opposing party of the asserted claim, 'it must also formulate the issues by summarizing those facts essential to support the claim.'" *Richardson v. Wetzel*,[15] 74 A.3d 353, 356-57 (Pa. Cmwlth. 2013) (quoting *Sevin v. Kelshaw*, 611 A.2d 1232, 1235 (Pa. Super. 1992)).

In his Complaint, Richardson avers that Taylor removed Richardson's cell window on August 22, 2013. He further asserts that he "[s]poke to both shifts of block officers," and brought the matter "to the attention of Cert team members who notified the Unit Manager." Complaint Ex. 1. Moreover, Richardson alleges that he filed his Grievance on January 20, 2014, he was moved to a different cell because of the missing window on January 23, 2014, and the window was replaced on January 31, 2014.

Richardson fails to state with specificity in his Complaint how each Defendant is liable to him for the damages he seeks. Rather, Richardson generally designated Walsh, Putnam, Truchon, Mooney, Gordner and Taylor as "tortfeasors" (Complaint ¶¶ 4-10), and averred legal conclusions that each "committed a criminal offense against [him]" (Complaint ¶¶ 18, 21, 24, 27, 30, 33, 36-38), and violated his constitutional rights (*see* Complaint ¶¶ 19, 22, 25, 28, 31, 34, 36-38) with no facts to substantiate his claim. **The Complaint does not make specific allegations of any wrongdoing against any Defendant.**

In the Complaint, Richardson merely reiterates general conclusions of law. It is not clear on the face of the Complaint who was responsible for the decision

---

[15] There is no apparent relationship between Richardson and the appellant in *Terrence Richardson v. Wetzel*.

11

to remove the cell window and allegedly not replace it. Nor does it state that Defendants were aware that the window was allegedly not replaced. The Complaint does not reflect that any Defendant was responsible for replacing the window or moving Richardson to another cell, or was even on notice that Richardson may have been subject to any adverse prison conditions, until he filed his Grievance nearly five months after the window was allegedly removed. Finally, despite that Richardson took advantage of the Department's grievance process, we cannot glean from his Grievance that Walsh, Putnam, Truchon, Mooney, Gordner or Taylor committed any specific wrongdoing.[16]

"In ruling on preliminary objections, . . . [we] need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Torres*, 997 A.2d at 1245. Under circumstances in which the Complaint fails to state if, when and/or how Defendants "committed a criminal offense against [him]" (Complaint ¶¶ 18, 21, 24, 27, 30, 33, 36-38), and/or violated his constitutional rights (*see* Complaint ¶¶ 19, 22, 25, 28, 31, 34, 36-38), Defendants cannot defend against Richardson's legal conclusions. Accordingly, because it "appear[s] with certainty that the law will not permit [Richardson's] recovery [from Defendants in this case]," the trial court did not err by sustaining Defendants' preliminary objections.[17] *Torres*, 997 A.2d at 1245.

---

[16] Even if there were specific allegations of constitutional violations against Defendants, Richardson's monetary damage claims would fail. This Court has held: "To date, neither Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution." *Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa. Cmwlth. 2006) (*en banc*).

[17] "This court may affirm the decision of the trial court on any grounds." *Slusser v. Black Creek Twp. Zoning Hearing Bd.*, 124 A.3d 771, 772 n.1 (Pa. Cmwlth. 2015); *see also Van Mastrigt v. Dalta Tau Delta*, 573 A.2d 1128, 1132 n.5 (Pa. Super. 1990) ("Although the lower court does not sustain the preliminary objections . . . on this basis, as an appellate court we may affirm a decision of the trial court if the result is correct on any ground.").

Based upon our holding, we need not address herein whether Richardson exhausted his administrative remedies.

Based upon the foregoing, we affirm the trial court's order.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Courtney Trent Richardson, : 
                Appellant : 
           : 
        v. : 
           : 
Jerome Walsh, Supt. (Retired), : 
Chris Putnam (Unit Manager J-Blk), : 
Michael Thruchon (Facility : 
Maintenance Manager 3), Paul : 
Mooney (Facility Maintenance : 
Manager 1), Greg Gordner (Facility : 
Maintenance  Manager 1), Mr. Taylor :   No. 1045 C.D. 2016
(Maintenance Worker), et al. : 

# O R D E R

AND NOW, this 19th day of December, 2016, the Luzerne County Common Pleas Court's January 5, 2016 order is affirmed.

 

_____
    ANNE E. COVEY, Judge